953 F.2d 640
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jeffrey Neal GREENWOOD, Defendant-Appellant.
 No. 91-5027.
 United States Court of Appeals, Fourth Circuit.
 Argued Oct. 30, 1991.
Decided Jan. 28, 1992.
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. James C. Cacheris, Chief District Judge. (CR-90-463-A)
 Argued: David Benjamin Smith, Jacobovitz, English & Smith, Alexandria, Va., for appellant; John Marshall Hodgens, Jr., Special Assistant United States Attorney, Alexandria, Va., for appellee.
 On Brief: Kenneth E. Melson, United States Attorney, Douglas E. Crow, Special Assistant United States Attorney, Margaret Anne O'Donnell, Assistant United States Attorney, Alexandria, Va., for appellee.
 E.D.Va.
 AFFIRMED.
 Before DONALD RUSSELL and HAMILTON, Circuit Judges, and JANE A. RESTANI, Judge, United States Court of International Trade, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Jeffrey Neal Greenwood ("appellant") was arrested on October 18, 1990. The arrest resulted from an automobile stop and subsequent consensual search, which uncovered a quantity of cocaine base ("crack"). Appellant entered a conditional plea of guilty to a onecount indictment charging him with possession of more than five grams of crack with intent to distribute. Appellant reserved his right to appeal the district court's denial of his motion to suppress the crack.
 
 
 2
 Following a December 14, 1990, suppression hearing, a magistrate judge concluded that a reasonable suspicion of illegal narcotics possession existed which warranted a stop to obtain consent to search and, alternatively, that the traffic-violation motive for the stop was not a pretext. Accordingly, the magistrate judge recommended that the motion to suppress be denied.
 
 
 3
 On February 1, 1991, a district judge adopted the magistrate judge's report and recommendation. On April 5, 1991, a different district judge reviewed the magistrate judge's recommendation de novo and thereafter imposed sentence.
 
 
 4
 Appellant argues that this court should reverse his conviction.
 
 Background
 
 5
 Approximately one year prior to appellant's arrest, Special Agent Ronald R. Buckley of the FBI received information from a confidential informant ("CI") that appellant was engaged in drug trafficking. Approximately two weeks prior to appellant's arrest, the CI informed Agent Buckley that appellant always carried drugs in the station wagon he drove for his job at the United Way. The CI's information included the following details: appellant was a black male, 5'6" to 5'8" tall, between 160 and 180 pounds, who drove a white station wagon with red American Red Cross stickers on the back windows for his job.
 
 
 6
 Agent Buckley knew the CI, had used his information on a daily basis for about two years, and was convinced that the tip was reliable. Information provided by the CI had never proved to be false. The CI told Agent Buckley that he personally had purchased drugs from appellant.
 
 
 7
 Agent Buckley verified the description of appellant and his car. It was decided that the FBI and Virginia State Police would stop appellant and try to obtain his consent to search the car. The next day, October 18, 1990, surveillance of appellant began. Trooper Benfield of the Virginia State Police was instructed to follow appellant's car and stop appellant when Special Agent Core of the FBI told him to do so. As he was following appellant, Trooper Benfield observed appellant make three improper lane changes. According to Benfield, the third lane change endangered the safety of another vehicle, so Benfield asked for and received permission to stop appellant's vehicle. Benfield then issued appellant a citation for an improper lane change.
 
 
 8
 After Benfield stopped appellant, State Trooper Wilkinson asked appellant if he would consent to a search of the car. The basic consent form was read to appellant. Appellant then read the form himself and signed it. The police searched the vehicle and found 6.3 grams of crack.
 
 
 9
 Trooper Benfield testified that he would have stopped appellant for the traffic violation even if appellant had not been under surveillance for suspected drug trafficking.
 
 Discussion
 
 10
 Appellant makes several arguments on appeal relating to the district court hearing and the pretextual nature of the stop. The court will first address the issue of whether the officers were able to point to "specific and articulable facts" and rational inferences which would justify an investigatory stop under Terry v. Ohio, 392 U.S. 1, 21 (1968).
 
 
 11
 Under the Terry rationale, investigatory stops and seizures of an individual may be based upon reasonable suspicion, a lesser standard than probable cause. Of course, there still must be some objective justification for a Terry stop. See United States v. Sokolow, 490 U.S. 1, 7 (1989). In examining the justification for a stop, the test is whether "[b]ased upon ... [the] whole picture the detaining officers ... have a particularized and objective basis for suspecting the particular person stopped of criminal activity." United States v. Cortez, 449 U.S. 411, 417-18 (1981). A temporary stop for the purposes of questioning the individual or attempting to obtain his consent to a search is permitted when reasonable suspicion exists. See United States v. Brignoni-Ponce, 422 U.S. 873, 884 (1975) (reasonable suspicion of criminal activity warrants temporary seizure for the purpose of investigating the circumstances which may include asking questions about suspicious circumstances); Florida v. Royer, 460 U.S. 491, 502 (1983) (if individual voluntarily consents to a search while he is justifiably detained on reasonable suspicion, the products of the search are admissible) (dicta).
 
 
 12
 As noted earlier, the magistrate judge and both district judges[1] found that the police stopped appellant's vehicle because they had formed a reasonable suspicion that appellant was engaged in drug trafficking. Appellant argues that this tip does not provide the requisite reasonable suspicion because the CI in this case received some of his information from another person, a person who was not known by the FBI.[2] Specifically, it was noted that Agent Buckley testified that he had worked with the CI for two years, the CI's information had always proved to be accurate, and he had verified the information given by the CI regarding appellant's physical appearance. The question is whether this predicate establishes reasonable suspicion. Upon review of relevant caselaw, this court finds that it does.
 
 
 13
 In Adams v. Williams, 407 U.S. 143 (1972), the Supreme Court sustained a Terry stop and frisk undertaken on the basis of a known informant's tip. Id. at 147. The Court found it significant that the informant had provided correct information in the past. See id. at 14647. Recently the Court has held an anonymous telephone tip, together with independent police corroboration of the information, sufficiently reliable to provide objective justification for a Terry stop. Alabama v. White, 110 S.Ct. 2412, 2414 (1990). In White, the Court recognized that "[r]easonable suspicion, like probable cause, ... [depends] upon both the content of information possessed by police and its degree of reliability." Id. at 2416. The Court found that "[w]hen significant aspects of the [anonymous tipster's] ... predictions were verified, there was reason to believe not only that the caller was honest but also that he was well informed, at least well enough to justify the stop." Id. at 2417. In other words, both quantity and quality of the information "are considered in the 'totality of the circumstances--the whole picture.' " Id. at 2416 (quoting United States v. Cortez, 449 U.S. at 417).
 
 
 14
 Appellant's argument that the tip was not reliable because a portion of the information was derived from an unknown third party and filtered through the reliable CI is misconceived. The CI did receive the information from a person unknown to the FBI, however, the fact remains that it was a reliable CI with a good track record who provided the tip. This court finds that the lower court's conclusion that the stop was justified on Terry grounds is entirely proper given the nature of the tip, the CI's track record, and the officer's corroboration of many details contained in the tip. Therefore, we uphold the district court's finding as to the presence of reasonable suspicion, which in turn permitted the police to stop appellant's vehicle in an attempt to obtain permission to search the vehicle.
 
 
 15
 Given that a Terry stop in this situation was appropriate, it is unnecessary for the court to reach appellant's arguments concerning the pretextual nature of the traffic stop or to consider whether the search was tainted by prior illegality.
 
 
 16
 The one remaining issue is whether the first district judge mistakenly applied a clearly erroneous standard when he reviewed the magistrate judge's report. At the hearing on February 1, 1991, the judge stated that he was applying a clearly erroneous standard of review to the magistrate judge's report. The correct standard, pursuant to the Federal Magistrate's Act, is de novo. 28 U.S.C. § 636(b)(1) (1988).
 
 
 17
 The government argues that the judge, despite his invocation of the clearly erroneous standard, actually used the de novo test. Although the court notes that the judge did not simply defer to the conclusions of the magistrate judge because he affirmatively stated that the appellant was stopped for a traffic violation as well as for a reasonable suspicion of narcotics possession, the fact remains that an incorrect standard was expressly invoked. The court is convinced, however, that this error was corrected when the sentencing judge conducted a de novo review of the evidence. This de novo review was both extensive and detailed. The sentencing judge analyzed the stop and concluded that sufficient justification existed to stop appellant based on Terry.
 
 
 18
 Accordingly, the magistrate judge's recommendation was reviewed de novo by the district court and appellant has not been injured by application of an incorrect standard of review or any other errors that might have existed in the first review.
 
 Conclusion
 
 19
 In conclusion, the final judgment of the district court should be affirmed. The evidence in this case indicates that the automobile stop was based on a reasonable suspicion of drug possession, and valid written consent to search was obtained.
 
 
 20
 AFFIRMED.
 
 
 
 [1]
 At sentencing, the second district judge reviewed the magistrate judge's recommendation de novo because he felt that the previous district judge may have used an incorrect standard of review. See infra at 6. The second district judge found that the police had sufficient justification to stop appellant, and alternatively, even if the stop was unlawful, appellant's subsequent consent to the search constituted an intervening act of free will sufficiently attenuated from the primary illegality
 
 
 [2]
 The CI advised that he had purchased drugs from the appellant. The secondhand information was that the appellant possessed drugs virtually at all times